# IN THE COURT OF APPEALS OF IOWA

_____

No. 26-0131
Filed June 24, 2026

_____

**In the Interest of R.W., Minor Child,**

**T.W., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County,
The Honorable Kimberly Ayotte, Judge.

_____

**AFFIRMED**

_____

Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des
Moines, attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Alexandra Maria Nelissen of Advocate Law PLLC, Clive, attorney and
guardian ad litem for minor child.

_____

Considered without oral argument
by Greer, P.J., Buller, J., and Bower, S.J.
Opinion by Buller, J.

**BULLER, Judge.**

A father appeals the termination of his parental rights, arguing only that the juvenile court should have granted him additional time for reunification with the child. We review de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

In March 2024, the child (born in 2022) was removed from the mother's care and placed with the maternal grandmother. The father was incarcerated following parole violations at that time. After his release a couple months later, he began making progress on case expectations.

In March 2025, the juvenile court granted the parents a six-month extension for reunification. The court's order outlined its expectations of the father for reunification to occur:

> d. [The father] will demonstrate his ability to maintain a sober lifestyle by engaging in recommended treatment, abstaining from the use of alcohol, providing negative screens at [the department of health and human services (HHS)] discretion, building a healthy, sober support system, and developing a detailed, written relapse prevention plan.
>
> e. [The father] will address his history of domestic violence by engaging in domestic violence specific services and engaging in individual therapy.
>
> f. [The father] will demonstrate the ability to safely parent [his] child by engaging in interactions at HHS discretion, participating in [his] child's medical, mental, dental health services as recommended. The [father] will learn how to co-parent safely.
>
> g. [The father] will show stability in all areas of his life by maintaining stable housing and demonstrating the ability to meet his and [the child]'s financial needs.

In May 2025, both parents severely regressed. The mother admitted to sobriety struggles with drugs and alcohol and said the father domestically abused her. The father skipped a scheduled court hearing claiming he was

going to Florida—though his explanation of why he was going and the timing of the travel evolved over time. He admitted he knew about the mother's alcohol-abuse relapse, but he chose not to report it in case it affected his visits. By June, he was blaming all setbacks (and the juvenile court's involvement) on the mother, yet the father had "regressed as he has refused visits, no longer has a job, and is not doing what is asked of him for reunification purposes."

A petition for the termination of both parents' rights was filed, with a termination trial in September. The mother died in late 2025, after trial but before the court ruled, and the juvenile court accordingly dismissed the petition to terminate the mother's rights and struck her testimony from the record. The court terminated the father's parental rights under Iowa Code section 232.116(1)(h) (2025). The father appeals.

In his petition on appeal, the father challenges the court finding child-welfare concerns relating to domestic violence and ongoing substance abuse. Without those two factors, he urges he would have had housing in place and been able to resume care of the child with "a minor extension of time." We interpret this argument as only challenging the court's denial of a six-month extension.

At trial, the father admitted, "I didn't do the things that was asked of me." He admitted to long-term methamphetamine use, with a five-year period of sobriety when raising his older children. He claimed sobriety from methamphetamine since getting out of prison in 2024, but he admitted to relatively constant marijuana use—including the day before the termination trial. He stopped complying with drug testing about five months before the termination trial. And while the father started substance-abuse treatment, he was "kicked out" after he missed some classes, and then "faded away" from

community-based options. He started counseling in May but soon stopped due to cost and did not locate any other therapist after that.

The father protested any accusations of domestic violence against the child's mother, only admitting a single occurrence of "push[ing] her in the snow." But he admitted struggling with anger issues. In December of 2022, the mother had reported the father assaulted her, and a police officer observed "she had bruises all over her face and legs." The father pled guilty to assault, and a no-contact order was entered to protect the mother from the father. Then, in May 2025, the mother reported to the court and then police that the father had assaulted her again. He did not complete any domestic violence programming.

"Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re Z.P.*, 948 N.W.2d 518, 523–24 (Iowa 2020) (citation omitted). So, to grant a six-month extension, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes" that lead it to determine the child will no longer need to be removed from the parent's home. Iowa Code § 232.104(2)(b). Here, the limitation period was six months. *See id.* § 232.116(1)(h)(1).

In its March 2025 order granting additional time—which was already one year out from removal—the juvenile court laid out precisely what conditions and changes were expected of the father. Unfortunately, the father did not make sustained progress on any of the requirements. He was required to engage in substance-abuse treatment, participate in domestic abuse programming and therapy, participate in the child's life and health services, and maintain a safe home and employment. While he made passing attempts at each goal, he was largely unsuccessful at sustained progress in every area other than visits with the child.

While we agree with the father that "the code does not require perfection," he falls short of even lower standards. Against the statutory requirements for six-month extension, we affirm the juvenile court's ruling denying additional time.

**AFFIRMED.**